## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**MARVIN F. JOHNSON, SR.,**                Case No. 1:19 CV 984

      Petitioner,                Judge Jeffrey J. Helmick

      v.                Magistrate Judge James R. Knepp II

**WARDEN LA SHANN EPPINGER,**

      Respondent.                **REPORT AND RECOMMENDATION**

### INTRODUCTION

*Pro se* Petitioner Marvin F. Johnson, Sr. ("Petitioner"), a prisoner in state custody, filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent La Shann Eppinger, Warden of the Grafton Correctional Institution ("Respondent") filed an Answer / Return of Writ (Doc. 7) and Petitioner filed a Reply / Traverse (Doc. 14).[1] Also pending is Petitioner's Motion for an Evidentiary Hearing (Doc. 13-2), which Respondent opposes (Doc. 15), and to which Petitioner replied (Doc. 16). The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry date May 3, 2019). For the reasons discussed below, the undersigned DENIES Petitioner's request for an evidentiary hearing (Doc. 13-2), and recommends the Petition (Doc. 1) be DENIED in its entirety.

---

1. Parties and Courts commonly use the terms "Return of Writ" and "Traverse" to refer to what the Rules Governing Section 2254 Cases now term an "Answer" and "Reply". *See* Rule 5 of the Rules Governing Section 2254 Cases.

**FACTUAL BACKGROUND**

For the purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, erroneous factual findings by the state court. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Eighth District Court of Appeals set for the facts on direct appeal:

{¶ 11} On February 12, 2015, a search warrant was issued for Johnson's residence in Euclid, Ohio. Johnson and the codefendant in this case were sleeping in the living room at the time the warrant was executed. Both were handcuffed while officers searched the residence.

{¶ 12} Johnson challenges paragraphs one, three, and four through nine of the affidavit and asserts that: (1) the affidavit contains materially false statements or omissions that were made with a reckless disregard for the truth, and (2) that probable cause was lacking because there was no evidence of ongoing drug trafficking. The trial court denied the motion:

> Defendant's motion to suppress is overruled. Upon review of testimony at hearing, court finds that search warrant was issued pursuant to fresh evidence set forth in the affidavit, including a controlled buy performed within appropriate time. Court further finds that background information, while vague as to operative facts, was mere surplusage and did not form the basis for issuance of the search warrant.

*See* journal entry no. 92089300 (Dec.15, 2015), at p. 1.

{¶ 13} Euclid Narcotics Detective Dave Carpenter ("Carpenter") was the affiant of the affidavit. Paragraph one of the affidavit states that "within the past year, the City of Euclid Police Department has received complaints of suspected drug activity occurring" at the premises. Johnson denied that police received any complaints. The second paragraph states that, based on "this information" affiant was in contact with a confidential informant ("CI") who stated that he or she made purchases from a "black male" and indicated a name for the seller, which is redacted. Paragraph three references an investigation of the "possible identity" of

2

the seller, and learned from a telephone call from a CMHA police officer that Johnson was selling drugs from the premises.

{¶ 14} Paragraphs four through nine recite: (1) identification of Johnson's LEADS photograph by the CI, (2) contact by the CI within the past 48 hours stating Johnson was selling heroin, (3) and the arrangement for the buy at affiant's request. The CI was searched, equipped with surveillance equipment, and driven to the premises by the affiant, who listened to the transaction and the substance the CI obtained tested positive for heroin.

{¶ 15} Carpenter was the sole witness at the suppression hearing. Carpenter testified, "approximately in March of 2014, we received information or a complaint from refused [sic] people, unidentified sources, of drug trafficking, specifically involving heroin sales at 27195 Oriole Avenue, City of Euclid." (Tr. 23.)

{¶ 16} As a result of the call, the department checked the address history, auditor information, and service calls to the address. Due to the small staff, Carpenter personally conducted surveillance and observed a "male cutting the grass" and no "short-term traffic." (Tr. 24.) He also followed Johnson once by car but discovered no illegal activity.

{¶ 17} Carpenter testified there were several telephone call complaints about drug activity at the premises after the March 14, 2014 call, though this information was not recounted in the affidavit. Carpenter also "received information from a person that could be a CI that alleged that this person could also purchase drugs" from the residence. (Tr. 28.) There were no written reports documenting the complaints. The only records consisted of basic property ownership information, service calls to Johnson's address, and Ohio Bureau of Motor Vehicle printouts.

{¶ 18} Carpenter's partner, Detective Jose Alcantara ("Alcantara"), was formerly a police officer with the Cuyahoga Metropolitan Housing Authority ("CMHA"). Fortuitously, Alcantara received a call from a former CMHA colleague "probably later in the year, probably around October, November it started, we received a second complaint" involving drug sales by Johnson. Carpenter "believe[d]" the CMHA contact was made in November 2014 because Johnson's LEADS record was run again on November 21, 2014.

{¶ 19} Carpenter was not a party to Alcantara's conversation with the CMHA contact and did not take notes when informed of the call by Alcantara. Carpenter did write down the names of Johnson and his female friend, address and phone number.

{¶ 20} Carpenter explained, regarding the CI:

> I had been in contact with this particular confidential informant which we tried, attempted to do previous purchases; it just didn't

3

happen. Again, that doesn't get documented if it doesn't happen; didn't document anything on that.

(Tr. 29.) The department frequently received complaints from individuals that were not developed for prosecution.

{¶ 21} Carpenter reiterated that no physical evidence exists regarding the department's receipt of any of the alleged complaints regarding drug sales. "Initially," there was a "single complaint." (Tr. 50.) No records exist regarding the "telephone tip," from Detective Alcantara's former coworker at CMHA. (Tr. 52.)

{¶ 22} The CI initially contacted Carpenter in May or June 2014, again during the summer, and again during the fall. Carpenter met with the CI two or three times beginning in the early fall of 2014 to attempt to set up a drug buy from Johnson. Carpenter also contacted the CI several times by telephone and text message to contact Johnson and initiate a buy.

{¶ 23} Around February 8, 2015, shortly after the CI completed serving a 30–day jail term for an undisclosed offense, Carpenter received a telephone call from the CI stating that Johnson was currently selling heroin.

{¶ 24} Carpenter recited the steps taken to protect the integrity of the controlled buy that took place on February 10, 2015. The CI was equipped with audio-visual surveillance equipment. Carpenter drove the CI to Johnson's residence.

{¶ 25} Carpenter heard Johnson discussing the price of heroin on the audio monitor but could not recall "off the top of [his] head" what the price was. (Tr. 38.) The CI observed Johnson remove the heroin from a plastic bag, purchased the heroin and emerged from the residence with a "paper-fold" containing "suspected heroin." (Tr 40.) During the purchase, Johnson informed the CI that he would sell the CI one gram of heroin for $100.

{¶ 26} Over defense counsel's objections, still photographs of the video allegedly taken during the transaction with Johnson were introduced into evidence. Defense argued that the dispute centered on the inaccuracies in the affidavit and lack of probable cause and not whether drugs were found as a result of the warrant execution.

{¶ 27} The CI contacted Carpenter 48 hours prior to execution of the search warrant. The controlled buy took place on February 10, 2015, the search warrant was issued on February 12, 2015, and the warrant was executed on February 13, 2015.

{¶ 28} The weight of the controlled buy was .6 grams for $60, but it was not charged in the instant indictment. Instead, Johnson was charged for the weight of the heroin located as the result of the warrant, exceeding 50 grams but less than 250 grams.

*State v. Johnson*, 2018 WL 460743, at *2-4 (Ohio Ct. App.) (footnotes omitted) ("*Johnson I*").

## PROCEDURAL HISTORY

State Court Conviction

In March 2015, a Cuyahoga County grand jury indicted Petitioner on one count of drug trafficking, two counts of drug possession, and one count of possession of criminal tools. (Ex. 1, Doc. 7-1, at 8-11). Each count carried forfeiture specifications. *See id.* Petitioner retained counsel (Jaime Serrat), and entered a not guilty plea. (Ex. 2, Doc. 7-1, at 12).

In November 2015, Petitioner filed a motion to suppress evidence seized from his residence. (Ex. 3, Doc. 7-1, at 13-27). The State opposed. (Ex. 4, Doc. 7-1, at 28-36). The trial court held a hearing, and denied Petitioner's motion. *See* Ex. 5, Doc. 7-1, at 37.

In December 2015, Petitioner withdrew his plea of not guilty and entered a no contest plea to one count of drug trafficking, one count of drug possession, and one count of possessing criminal tools. (Ex. 6, Doc. 7-1, at 38). The trial court found Petitioner guilty. *Id.*

In May 2016, the trial court sentenced Petitioner to an aggregate sentence of six years imprisonment and five years of post-release control. (Ex. 7, Doc. 7-1, at 39-40). Attorney David Grant represented Petitioner at this proceeding. *See id.* at 39. The trial court stayed execution of the sentence pending Petitioner undergoing a surgical procedure and noted that Petitioner was "to appear to begin serving sentence no later than August 1, 2016, at 9:00 a.m., or sentence will be vacated and new sentence will be imposed." *Id.* at 39 (capitalization altered).

In July 2016, the trial court scheduled a bond hearing after Petitioner's probation officer reported Petitioner repeatedly tested positive for marijuana. (Ex. 8, Doc. 7-1, at 41). Petitioner failed to appear, and the trial court ordered Petitioner to appear on or before September 23, 2016. (Ex. 9, Doc. 7-1, at 42). The trial court then ordered Petitioner to report to begin his sentence, and

set a bond hearing for August 2, 2016. (Ex. 10, Doc. 7-1, at 43). Petitioner again failed to appear and the trial court issued a capias for his arrest. (Ex. 11, Doc. 7-1, at 44).

In February 2017, Petitioner sent a *pro se* letter to the court explaining he had not appeared because he was still recovering from his medical procedure. (Ex. 12, Doc. 7-1, at 45-46). On February 13, 2017, Petitioner appeared in court with attorney David Grant, and the trial court sentenced him to an aggregate sentence of eight years imprisonment. (Ex. 13, Doc. 7-1, at 54-55).

Direct Appeal

Petitioner, through new counsel, filed a timely notice of appeal to the Eighth District Court of Appeals. (Ex. 14, Doc. 7-2, at 56). In his appellate brief, Petitioner set forth four assignments of error:

1. The trial court erred when it denied appellant's Motion to Suppress Evidence.

2. The trial court erred when it imposed an 8 year prison term, that is not supported by the record.

3. The trial court erred when it re-sentenced appellant to an increased prison term of 8 years, after initially imposing a 6 year prison term.

4. Appellant was denied the effective assistance of counsel, when at the re-sentencing hearing, trial counsel failed to object to an increased prison term of 8 years; and when trial counsel failed to object to the issuance of a capias for appellant's failure to appear in court because of medical reasons.

(Ex. 15, Doc. 7-1, at 63-81). The State filed a brief in response. (Ex. 16, Doc. 7-1, at 85-98). On January 18, 2018, the appellate court affirmed in part, and reversed in part. (Ex. 17, Doc. 7-1, at 99-116); *Johnson I*, 2018 WL 460743. The appellate court overruled Petitioner's suppression argument, and sustained his sentencing error argument, finding the trial court lacked jurisdiction to modify the original six-year sentence to the subsequent eight-year sentence, and "[t]he original

sentence . . . still in effect." *Id.* at *7.[2] The court thus remanded for the limited purpose of executing the original sentence. *Id.*

In two motions – one through counsel, and one *pro se* – Petitioner sought reconsideration and *en banc* consideration. *See* Exs. 18-19, Doc. 7-1, at 117-25. Both challenged the appellate court's denial of the suppression issue. *See id.* Petitioner subsequently filed a motion for leave to supplement his motion to add a vindictive sentencing claim. (Ex. 20, Doc. 7-1, at 126-29). The State filed a response. (Ex. 21, Doc. 7-1, at 130-34). On February 20, 2018, the appellate court issued four entries denying the motions for reconsideration, request for *en banc* review, and Petitioner's motion to supplement. (Ex. 22, Doc. 7-1, at 135-38; Doc. 10-1, at 2).

Petitioner filed a notice of appeal with the Ohio Supreme Court, challenging the appellate court's January 18, 2018 and February 20, 2018 judgments. (Ex. 23, Doc. 7-1, at 139-40). In his memorandum in support of jurisdiction, Petitioner raised four propositions of law.

1. The Court of Appeals Affirmant [sic] of Proposition of Law No. I: The trial court erred when it denied Appellant's motion to suppress.

2. The Court of Appeals Affirmant [sic] of Proposition of Law No. II: The trial court erred when it imposed an 8 year prison term, that is not supported by the record.

3. The Court of Appeals Reversal and Remand for Limited Purpose of Proposition of Law No. III: The trial court erred when it re-sentenced appellant to an increased prison term of 8 years after initially imposing a 6 year prison term.

4. The Court of Appeals Mooting of Proposition of Law No. IV: Appellant was denied the effective assistance of counsel, when at the re-sentencing hearing, trial counsel failed to object to an increased prison term of 8 years: and when trial counsel failed to object to the issuance of a capias for Appellant's failure to appear in court because of medical reasons.

---

2. Given this determination, the appellate court found Petitioner's fourth assignment of error moot. *See Johnson I*, 2018 WL 460743, at *7.

7

(Ex. 24, Doc. 7-1, at 141-57) (capitalization altered). The State waived a response (Ex. 25, Doc. 7-1, at 178), and on May 23, 2018, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to Ohio Supreme Court Practice Rule 7.08(B)(4) (Ex. 26, Doc. 7-1, at 179).

Application to Reopen

On May 9, 2018, Petitioner filed a *pro se* application to reopen his appeal pursuant to Ohio Appellate Rule 26(B). (Ex. 27, Doc. 7-1, at 180-94). Therein, he asserted appellate counsel was ineffective for three reasons:

1. Appellate counsel's failure to raise as a[n] assignment of error that the Appellant's plea of no contest was not entered knowing, intelligent, and voluntary due to: (a) breach of plea agreement; (b) judicial participation in the plea bargaining discussion and process; and (c) denial of the effective assistance of counsel, violated Applicant's rights under the Sixth Amendment to the United States Constitution.

2. Appellate counsel's failure to raise as an assignment of error that the Appellant's sentence of six years was based upon vindictiveness, violated Appellant's rights under the Sixth Amendment to the United States Constitution.

3. Appellate counsel's failure to object and/or notify the court of the prosecutor filing exhibits not certified for appellate review at the oral argument hearing; [] and failing to argue the error of the court considering the ex[]hibits in resolving the legal issues before the court when he filed Applicant's App.R.26(A)(1) & App.R.26(A)(2), violated Appellant's rights under the Sixth Amendment to the United States Constitution.

*Id.* Petitioner attached a letter to his filing stating: "[D]ue to timely filed App.R.26(A) application, the case was not journalized as final until February 20, 2018, rendering this application submitted within the ninety-day filing deadline." (Doc. 10-1, at 1). The State filed a response (Ex. 28, Doc. 7-1, at 195-98), and Petitioner replied (Ex. 29, Doc. 7-1, at 199-201). Petitioner subsequently filed a motion for leave to supplement (Ex. 30, Doc. 7-1, at 202-24), which the appellate court denied (Ex. 31, Doc. 7-1, at 225).

On July 17, 2018, the appellate court denied Petitioner's application to reopen, finding it untimely and that Petitioner had not shown good cause for the delay. (Ex. 32, Doc. 7-1, at 226-30); *State v. Johnson*, 2018 WL 3479244 (Ohio Ct. App) ("*Johnson III*"). The appellate court also denied Petitioner's subsequent request (Ex. 33, Doc. 7-1, at 231-36) for reconsideration. (Ex. 34, Doc. 7-1, at 237).

Petitioner appealed this decision to the Ohio Supreme Court (Ex. 25, Doc. 7-1, at 238), raising the same arguments he raised to the appellate court regarding appellate counsel's alleged ineffectiveness. *See* Ex. 36, Doc. 7-1, at 240-62. The State waived a response. (Ex. 37, Doc. 7-1, at 263). Petitioner subsequently filed a "Motion for Order or Relief Pursuant to S. Ct. Prac. R. 7.01(A)". (Ex. 38, Doc. 7-1, at 264-375). On October 24, 2018, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to Ohio Supreme Court Practice Rule 7.08(B)(4). (Ex. 39, Doc. 7-1, at 376). On December 26, 2018, the Ohio Supreme Court denied both Petitioner's subsequent motion for reconsideration (Ex. 40, Doc. 7-1, at 377-83), and his earlier motion for order or relief (Ex. 41, Doc. 7-1, at 384).

Post-Conviction Petition to Vacate or Set Aside Judgment of Conviction or Sentence

While his direct appeal was pending, on March 24, 2017, Petitioner, *pro se*, filed a petition to vacate or set aside his conviction or sentence. (Ex. 42, Doc. 7-1, at 385-402). Therein, he raised the following claims:

1. Petition[er's] rights under the Fifth and Fourteenth Amendments, U.S. Constitution; Section 16 Article 1, Ohio Constitution to due process was infringed.

   (I) The court violated Petitioner['s] constitutional rights to procedural Due Process throughout the case after conviction.

2. Petitioner['s] rights under the Eighth Amendment U.S. Constitution; Section 9, Article 1, Ohio Constitution to cruel and unusual punishment was infringed.

       (I)    Petitioner was denied a constitutional right to basic fairness from the court.

       (II)   Petitioner is being denied proper medical care by being incarcerated; jails and prisons do not have cardiac electrophysiology to monitor nor treat his condition.

3.    Petitioner['s] rights under[] the Sixth Amendment U.S. Constitution; Section 10 Article 1, Ohio Constitution; right to effective assistance of counsel was infringed.

       (I)    When attorney Jamie Serrat outright abandoned petitioner at a critical stage[] of proceedings.

4.    Petitioner['s] rights under the Sixth Amendment U.S. Constitution; Section 10 Article I, Ohio Constitution, right[] to effective assistance of counsel was infringed.

       (I)    When attorney David Grant failed to ensure perfection of direct appeal notice.

       (II)   Failed to advocate client['s] rights at the July 25, 2016 sentencing hearing.

*Id.* (capitalization altered). The State filed a responsive brief (Ex. 43, Doc. 7-1, at 403-14), as well as proposed findings of fact and conclusions of law (Ex. 44, Doc. 7-1, at 415-26). The trial court denied the petition, finding Petitioner's claims barred by *res judicata* and meritless (Ex. 45, Doc. 7-1, at 427-35), and issued findings of fact and conclusions of law (Ex. 46, Doc. 7-1, at 436-39).

Petitioner filed a notice of appeal (Ex. 47, Doc. 7-1, at 440) and on June 6, 2017, the appellate court issued a *sua sponte* order indicating it would treat the appeal of the post-conviction denial as a companion case to Petitioner's direct appeal (Ex. 48, Doc. 7-1, at 441). In his brief, Petitioner summarized his argument:

The denial of due process, the interface between an improperly engaged judiciary against petitioner's serious medical condition(s), and the boundaries between the right to assistance of counsel, and effective assistance of counsel all collided in this case, in a way that violated the petitioner's constitutional rights.

(Ex. 49, Doc. 7-1, at 493). He also asserted four claims:

1.  Petitioner asserted indigency, was declared indigent, and was told by the court it would appoint [] appellate counsel for the denial of the petitioner's motion to suppress.

2.  Petitioner contends that as a direct result of the trial court[']s failure to allow a continuance from the July 25, 2016, bond hearing and issuing a capias; He was denied the time to recover, and subsequent follow-up care by a cardiac pacing electrophysiologist after Heart Surgery p[er]formed on July 22, 2016, and during his entire incarceration from Cuyahoga County Jail, Lorain Correctional, and Grafton Correctional he has not been seen by any cardiologist[.]

3.  Petitioner asserts that attorney Jaime Serrat's abandonment after the suppression hearing, and his failure to file a notice of appeal violated his 6th U.S.C.A. rights.

4.  Petitioner asserts that it is a[n] infringement of his 6th U.S.C.A. rights, when counsel David Grant failed to attach a[n] affidavit of indigency to the filing of petitioner's motion to appoint counsel for appeal. "Especially" when the court use such as it[]s reasoning for vacating it[]s initial order granting the petitioner counsel for appeal.

*Id.* at 493-96 (capitalization altered). The State filed a brief in response (Ex. 50, Doc. 7-1, at 528-43), and Petitioner replied (Ex. 51, Doc. 7-1, at 544-54). On January 18, 2018, the appellate court affirmed the trial court's denial of the post-conviction petition on the basis of res judicata. (Ex. 52, Doc. 7-1, at 555-61); *State v. Johnson*, 2018 WL 459834 (Ohio Ct. App.) ("*Johnson II*"). Petitioner subsequently filed a motion for reconsideration (Ex. 53, Doc. 7-1, at 562-65), which the appellate court denied on February 20, 2018 (Ex. 54, Doc. 7-1, at 566). Petitioner also filed a motion to certify a conflict (Ex. 55, Doc. 7-1, at 567-69), to which the State filed an opposition (Ex. 56, Doc. 7-1, at 570-72), and Petitioner filed a motion for leave to reply (Ex. 57, Doc. 7-1 at 573-74). On April 10, 2018, the appellate court denied both Petitioner's motion for leave to reply and the underlying motion to certify a conflict. (Ex. 58, Doc. 7-1, at 575-76).

Petitioner filed an appeal of this denial to the Ohio Supreme Court. (Ex. 59, Doc. 7-1, at 577-78). He set forth three propositions of law in his memorandum in support of jurisdiction:

11

1. Appellant's rights under the Fifth, and Fourteenth Amendments to the United States Constitution, and Article I, Section Sixteen of the Ohio Constitution; Due Process was infringed.

2. Appellant's rights under the Eighth Amendment to the United States Constitution, and Article I, Section Nine of the Ohio Constitution; Prohibition Against Cruel and Unusual Punishment.

3. Appellant's rights under the Sixth Amendment to the United States Constitution, and Article I, Section Ten of the Ohio Constitution; Right to Effective Assistance of Counsel was infringed.

(Ex. 60, Doc. 7-1, at 579-605). Petitioner also filed a "Motion to Notify" the court of his denied motion to certify a conflict. (Ex. 61, Doc. 7-1, at606-09). On June 20, 2018, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to Ohio Supreme Court Practice Rule 7.08(B)(4) and also denied review of the appellate court's denial of the motion to certify a conflict. (Ex. 62, Doc. 6-1, at 610).

Resentencing

After the appellate court's remand, the trial court held a resentencing hearing on March 29, 2018) and re-sentenced Petitioner to an aggregate sentence of six years. (Ex. 63, Doc. 7-1, at 611-12). Petitioner filed a timely *pro se* appeal (Ex. 64, Doc. 7-1, at 613-14), and raised four assignments of error:

1. Appellant's plea of no contest was not entered knowing, intelligent, and voluntary due to (a) breach of plea bargain[,] (b) judicial participation in the plea discussion and process[,] (c) denial of the effective assistance of trial counsels. [sic]

2. The trial court erred when it imposed a 6 year prison sentence on the appellant that was based upon vindictiveness.

3. The trial court abused it[]s discretion by denying as moot[] appellant's motion to withdraw "no contest" plea: to correct manifest injustice pursuant to Crim. R. 32.1.

4. The trial court abused it[]s discretion by denying the appellant jail-time credit for 61 days sent on electronic monitored house arrest[.]

12

(Ex. 65, Doc. 7-1, at 622-54). The State filed a brief in response (Ex. 66, Doc. 7-1, at 655-64), and Petitioner replied (Ex. 67, Doc. 7-1, at 665-71).

On February 21, 2019, the appellate court affirmed in part, and remanded in part. (Ex. 68, Doc. 7-1, at 672-80); *State v. Johnson*, 2019 WL 856535 (Ohio Ct. App) ("*Johnson IV*"). The appellate court found the trial court never considered Petitioner's motion to withdraw[3] his no contest plea and remanded for consideration thereof. *Johnson IV*, 2019 WL 856535. It otherwise affirmed the trial court's judgment. *Id*. The appellate court also denied Petitioner's later applications for reconsideration and *en banc* consideration. *See* Exs. 69-70, Doc. 7-1, at 681-91).

Petitioner filed a *pro se* notice of appeal to the Ohio Supreme Court. (Ex. 71, Doc. 7-1, at 692-93). In his memorandum in support of jurisdiction, he raised three propositions of law:

1.  Appellant's plea of no contest was not entered knowing, intelligent, and voluntary due to (a) breach of plea bargain; (b) judicial participation in the plea bargaining discussion and process; (c) denial of the effective assistance of trial counsels [sic], violating the Appellant's rights under the 5th, 6th, [and] 14th[] Amendments to the United States Constitution, and Article 1, Sections 10, 16, of the Ohio Constitution.

2.  The trial court erred when it imposed a 6 year prison sentence on the Appellant that was based upon vindictiveness, violating the Appellant's rights under the 5th & 14th Amendments to the United States Constitution, and Article[] 1, Section 16, of the Ohio Constitution.

3.  The trial court abused it[]s discretion by denying the Appellant jail-time credit for 61 days confined to electronic monitored house arrest (EMHA).

(Ex. 72, Doc. 7-1, at 694-709) (capitalization altered). On June 26, 2019, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to Ohio Supreme Court Practice Rule 7.08(B)(4). (Ex. 73, Doc. 7-1, at 721).

---

3. This motion is described further below.

Motion to Withdraw Plea

Meanwhile, as noted above, on March 28, 2018, Petitioner filed a *pro se* motion to withdraw his no contest plea. (Ex. 79, Doc. 7-1, at 776-800). In his memorandum, he asserted the following as the basis for a withdrawal of his plea:

1. Petitioner's plea of no contest was not entered knowingly, intelligently, or voluntarily, but in fact, was induced by the prosecutor's unfulfilled promise(s), thereby violating his rights under the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Sections Ten and Sixteen of the Ohio Constitution.
    a) Petitioner was denied the due process of law when his plea of no contest was induced by an implied statement by the Prosecutor during the plea bargaining process.

2. Petitioner's plea of no contest was not entered knowingly, intelligently, or voluntarily due to judicial participation in the plea bargaining process, thereby violating his rights under the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Sections Ten and Sixteen of the Ohio Constitution.

    a) Petitioner was denied due process of law when the Judge interfered in the plea bargaining discussions.
    b) Petitioner was denied due process of law when the Judge prevented the Prosecutor from stating (on the record) the factual basis with which to take the plea (the plea agreement).

3. Petitioner's plea of no contest was not entered knowingly, intelligently, or voluntarily due to denial of effective assistance of counsel, thereby violating his rights under the Sixth and Fourteenth Amendments of the United States Constitution, and Article I, Sections Ten and Sixteen of the Ohio Constitution.

    a) Based on Counsel's failure to meet a valid legal standard during the plea bargaining process.
    b) Based on Counsel's absence from Petitioner's sentencing hearing.

*Id.* (capitalization altered). The State filed a response (Ex. 80, Doc. 7-1, at 801-09), to which it attached the plea hearing transcript (*id.* at 810-24), and an earlier pretrial transcript (*id.* at 825-31); Petitioner replied (Ex. 81, Doc. 7-1, at 832-37). Following the above-cited remand from the appellate court, on August 8, 2019, the trial court held a hearing on Petitioner's motion (at which

the trial court appointed Petitioner stand-by counsel). (Ex. 82, Doc. 7-1, at 838). The trial court then denied Petitioner's motion to withdraw. *See id.* After Respondent filed his Answer and the state court record, Petitioner continued to pursue this motion on appeal. *See State v. Johnson*, Case No. CA-19-108937 (Ohio Ct. App.), https://cpdocket.cp.cuyahogacounty.us/Search.aspx. The case remains pending before the Eighth District Court of Appeals.

Motion to Comply with Plea Agreement

Also during the pendency of other proceedings, on June 5, 2018, Petitioner filed a *pro se* motion with the trial court requesting it order the State to comply with the terms of the plea agreement. (Ex. 74, Doc. 7-1, at 722-40). He argued the State was bound by its earlier offer of a two-year plea deal. *Id.* The State filed a response (Ex. 75, Doc. 7-1, at 741-46), and attached the transcript of the plea hearing (*id.* at 747-68). On June 19, 2018, the trial court overruled Petitioner's motion. (Ex. 76, Doc. 7-1, at 769). The trial court also denied Petitioner's subsequent motion (Ex. 77, Doc. 7-1, at 770-74) for reconsideration. (Ex. 78, Doc. 7-1, at 775).

## FEDERAL HABEAS CORPUS

In his Petition, filed with the Court on May 2, 2019, Petitioner raises eight grounds for relief:

> **GROUND ONE:** Petitioner's rights under U.S. Const. 4th & 14th Amend. against unreasonable searches and seizures was violated when his home was illegally searched[.]
>
> **Supporting facts:** The evidence adduced at the suppression hearing established that the search warrant for Petitioner's residence lacked probable cause. [1] The affidavit failed to state any date and time when alleged complaints were made, how many complaints were made, who made the complaints, and what the contents of the complaints were; [2] The alleged complaints were made eleven months prior to the search warrant; [3] The informant was not a Confidential Reliable Informant because she had not given reliable and factual information in the past leading to arrests; [4] The informant made many unsuccessful efforts to purchase drugs from the Petitioner before the single controlled buy of .6 grams was conducted, questioning her credibility, and rendering the controlled buy a single isolated

incident and not protracted ongoing criminal activity; [5] There were no illegal activity observed during surveillance of the Petitioner or his home; [6] The informant provided no statement of additional drugs inside the home.

**GROUND TWO:**      Petitioner's rights under U.S. Const. 6th Amend. right to effective assistance of trial counsel was violated when counsel failed to protect Petitioner's rights[.]

**Supporting facts**: Petition[er] underwent heart surgery on July 22, 2016, was released on July 23, 2016, and was ordered a week of bedrest for recovery. The Petitioner provide counsel and the court documentations verifying surgery date and required dates for recovery. Notwithstanding, the trial court set a bond revocation hearing for July 25, 2016, for the Petitioner to appear for testing positive for marijuana (under 72 hours of heart surgery). [1] When Petitioner did not appear at the hearing because he was medically unable; recovering from heart surgery, counsel David Grant failed to notify, appear at the hearing, and/or object to the trial court revoking the Petitioner's bond and issuance of a capias for his arrest. [2] At the resentencing hearing, where the trial court illegally increased Petitioner's sentence from six years -to- eight years for not appearing at the July 25, 2016, bond hearing, counsel David Grant failed to object and argue the illegality of the increased sentence.

**GROUND THREE**:    Petitioner's rights under U.S. Const. 5th & 14th Amends. due process and equal protection of the law was violated based upon prosecutorial misconduct and fraud upon the court; abuse of discretion; and constitutionally unfair appellate review process[.]

**Supporting facts:** On December 10, 2015, during a suppression hearing, the Prosecutor was prohibited from introducing into evidence four exhibits. Thereafter, the trial court overruled Petitioner's motion to suppress. Petitioner then appealed to the Eighth District Appellate Court. On November 01, 2017, an oral argument hearing was held. Afterwards, on November 02, 2017, the Prosecutor filed the four inadmissible exhibits in the appeals court. Subsequently, the appeals court affirmed the trial court's judgment overruling Petitioner's motion to suppress. The appeals court's judgment and opinion reflected that the court had considered the evidence from the inadmissible exhibits in reaching the court's decision.

**GROUND FOUR:**    Petitioner's rights under U.S. Const. 8th Amend. to be free from cruel and unusual punishment was violated when the trial court wholly failed to consider the Petitioner's medical condition before issuing a capias and imposing sentence[.]

**Supporting facts:**    During the sentencing stage of Petitioner's case, it was revealed that he required a life-threatening heart procedure. Subsequently, leading to repeated heart surgeries in a five month period. During such period, the Petitioner

16

proffered the court correspondence(s) from The Cleveland Clinic's Heart Specialists and Surgeons informing the court of Petitioner's life-threatening diagnosis, dates of procedures required, and the amount of recovery time and follow-up care needed. First, knowing the Petitioner's condition the court imposed a prison sentence that was not the minimum. Then ultimately, when the Petitioner was medically unable to appear at a July 25, 2016 bond revocation hearing (scheduled within 72 hours of the heart surgery performed on July 22, 2016), the court punished the Petitioner by revoking his bond and issuing a capias for his arrest, and resentencing him to an even more harsher prison sentence.

**GROUND FIVE:** Petitioner's rights under U.S. Const. 6th Amend. right to effective assistance of counsel was violated when counsel abandoned the Petitioner[.]

**Supporting facts:** Petitioner's retained trial attorney "Jaime Serrat" abandoned the Petitioner at a critical stage in his case (sentencing). Counsel orchestrated a defense strategy that induced the Petitioner's no contest plea. The plea was made solely on the belief induced by counsel that the Petitioner would receive the minimum prison sentence, then counsel failed to appear at the sentencing hearing to see such strategy through. As a direct result, the Petitioner did not receive the minimum prison sentence, as counsel stated to Petitioner and on-the-record at the change of plea hearing he would advocate for. Petitioner did not fire counsel, nor did counsel request and be given permission to withdraw.

**GROUND SIX**: Petitioner's rights under U.S. Const. 5th & 14th Amends. due process & equal protection of the law was violated when the trial court denied his post conviction relief petition[.]

**Supporting facts:** [1] The trial court denied the Petitioner's Post Conviction Relief Petition by the doctrine of res judicata while his direct appeal was pending. [2] The State filed a Proposed Finding of Fact and Conclusion of Law Brief in response to Petitioner's petition on May 02, 2017, and the Trial Court entered a Memorandum of Opinion and Order denying the Petitioner's petition on May 03, 2017, (less than 24 hours apart). Thus, depriving the Petitioner a response to the State's opposition.

**GROUND SEVEN:** Petitioner's rights under U.S. Const. 6th Amend. right to effective assistance of counsel was violated when appellate counsel failed to meet a valid legal standard; and failed to protect Petitioner's rights[.]

**Supporting facts:** [1] Petitioner's appellate counsel Gregory Robey failed to raise prejudicial errors that were made in the trial court that had a reasonable probability of success had he presented the issues to the appellate court; [2] Appellate counsel allowed the State's Attorney to file exhibits in the court of appeals; [3] Appellate counsel allowed the State's Attorney to argue on appeal,

evidence ruled inadmissible by the trial court; [4] Appellate counsel failed to call to the attention of the appeals court in filing Petitioner's App.R.26(A) Application that the court had added inadmissible and uncertified exhibits to the record certified for review; and had considered the evidence that derived from the inadmissible and uncertified exhibits in determining the merits of Petitioner's Assignment of Error No. I.

**GROUND EIGHT:**  Petitioner's rights under U.S. Const. 5th & 14th Amends. due process and equal protection of the law was violated when the court of appeals denied his application for reopening appeal[.]

**Supporting facts:**      On January 18, 2018, the Court of Appeals announced and journalized the court's decision in Petitioner's direct appeal. (See Johnson C.A. #105560). On January 26, 2018, the Petitioner through appellate counsel Gregory Robey, filed a <u>timely</u> Application for Reconsideration & En Banc Consideration. On February 20, 2018, the appeals court denied both application(s) and journalized the court's judgments. On May 09, 2018, (78-days) after the appeals court denied and journalized Petitioner's <u>timely</u> filed App.R.26(A)(1) & (2) Applications, the Petitioner filed an Application for Reopening App.R.26(B) with correspondence explaining why the application should be held timely filed. On July 17, 2018, the appeals court denied Petitioner's App.R.26(B) Application as untimely filed, and failure to give reasons for delay.

(Doc. 1) (capitalization altered).

## PROCEDURAL DEFAULT

Petitioners must exhaust state court remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied when a petitioner has given "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). The doctrine of exhaustion "requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also Williams v. Wolfenberger*, 513 F. App'x 466, 468 (6th Cir. 2013).

A petitioner can procedurally default a claim in two ways. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, he may fail "to comply with state procedural rules in presenting his

claim to the appropriate state court." *Id.* The Sixth Circuit applies a four-part test to determine whether a claim has been procedurally defaulted in this way: 1) whether there is a state procedural rule applicable to the petitioner's claim, with which he has failed to comply; 2) whether the state courts actually enforced the state procedural sanction; 3) whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim; and 4) if prongs one through three are satisfied, whether the petitioner has demonstrated cause for his failure to comply and actual prejudice resulting from the constitutional error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009). Second, a petitioner may default by failing "to raise a claim in state court, and pursue that claim through the state's ordinary appellate review procedures." *Williams*, 460 F.3d at 806 (internal citations and quotation marks omitted); *see also Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004) ("A federal court is also barred from hearing issues that could have been raised in the state courts, but were not[.]").

## MERITS STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted). An application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Thus, a court may grant habeas relief if the state court arrives

at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the state court decides a case differently than did the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## DISCUSSION

Respondent contends that all eight of Petitioner's grounds for relief are non-cognizable, procedurally defaulted, or meritless. For the reasons discussed below, the undersigned agrees and recommends the Petition be denied in its entirety.

Grounds One and Three

In Ground One, Petitioner asserts his Fourth and Fourteenth Amendment rights were violated when his home was illegally searched. (Doc. 1, at 5). In Ground Three, he alleges his due process and equal protection rights were violated when the State presented four exhibits to the appellate court that the trial court had ruled inadmissible at the suppression hearing. *Id.* at 8.

Respondent contends these claims are non-cognizable, *see* Doc. 7, at 22-23, 24-25; Petitioner claims they are, and argues the merits, *see* Doc. 14, at 3.

In *Stone v. Powell*, 428 U.S. 465 (1976), the United States Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced in his trial." *Id.* at 494. *Powell*'s limitation on federal habeas relief is not jurisdictional in nature, but rests on "prudential concerns counseling against the application of the Fourth Amendment exclusionary rule on collateral review." *Withrow v. Williams*, 507 U.S. 680, 686 (1993). Two considerations underpin *Powell*'s general rule against federal habeas review of Fourth Amendment claims: first, the "key purpose of federal habeas corpus is to free innocent prisoners[, and] whether an investigation violated the Fourth Amendment has no bearing on whether the defendant is guilty"; and, second, "exclusion is a prudential deterrent prescribed by the courts, not a personal right guaranteed by the Constitution[, so] [a]ny deterrence produced by an additional layer of habeas review is small, but the cost of undoing final convictions is great." *Good v. Berghuis*, 729 F.3d 636, 637 (6th Cir. 2013) (citing *Powell*, 428 U.S. at 490, 493).

In 2013, Sixth Circuit interpreted and applied *Powell* in *Good v. Berghuis*, *supra.* The court clarified that an "opportunity for 'full and fair consideration'" under the *Powell* standard "means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Good*, 729 F.3d at 639. Thus, "[i]n the absence of a sham proceeding, there is no need to ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedures for resolving the claim." *Id.* Instead, federal habeas courts "must . . . presume that, once

21

a federal claim comes before a state court, the state judge will use a fair procedure to achieve a just resolution of the claim". *Id.* Applying these principles, the court held that *Powell* precluded federal habeas review of the petitioner's Fourth Amendment claim because, even though he was not granted an evidentiary hearing on his motion to suppress, he was able to present his motion to the state trial and appellate courts, which considered and rejected it. *Id.* at 640.

The same is true here – Petitioner had an "opportunity for 'full and fair consideration'" , meaning "an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Id.* at 639. The trial court conducted a suppression hearing, and ruled against Petitioner. *See* Ex. 5, Doc. 7-1, at 37. He further argued his claim on direct appeal. *See* Ex. 15, Doc. 7-1, at 71-75; Exs. 18-19, Doc. 7-1, at 117-25; Ex. 24, Doc. 7-1, at 147-51. In these circumstances, habeas relief is unavailable. *See Good*, 729 F.3d at 640 ("Good could, indeed did, present his suppression motion to the state trial court, and the trial court rejected it. He presented it again to the state appellate court, and the appellate court rejected it once more. That suffices to preclude review of the claim through a habeas corpus petition under *Stone v. Powell*.")

Further, any error – as asserted in Ground Three – in the state appellate court's consideration of certain evidence in affirming the trial court's ruling on suppression is similarly non-cognizable. This is true for two reasons – first, because the underlying claim (violation of the Fourth Amendment) is not cognizable on habeas review, and second, because any error in procedure is not relevant to the underlying claim. *See Good*, 729 F.3d at 639 ("[W]e make clear that the *Powell* 'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim.").

22

For these reasons, the undersigned recommends Grounds One and Three be denied as non-cognizable.

Ground Two

In Ground Two, Petitioner asserts a claim of ineffective assistance of trial counsel in violation of the Sixth Amendment. Specifically, he asserts counsel provided him ineffective assistance by: (1) failing to notify the court as to Petitioner's medical unavailability; (2) failing to appear at the bond revocation hearing, and failing to object to the trial court's revocation of bond and issuance of a capias for Petitioner's arrest; and (3) failing to object and argue the illegality of the increase from a six year sentence to an eight year sentence. (Doc. 1, at 7). Respondent asserts this claim must fail because Petitioner cannot show prejudice. (Doc. 7, at 23-24). This is so, he asserts, because Petitioner ultimately received, and is currently serving, the *six*-year, rather than the *eight*-year sentence. *Id.* The undersigned finds the first two sub-claims of Ground Two are non-cognizable, and the third sub-claim fails on the merits.

Petitioner's contentions as to counsel's failure to notify the trial court of Petitioner's unavailability, and failure to object to the bond revocation (with the following issuance of a capias), are non-cognizable. This is so because habeas relief is limited to claims that a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The issuance of a capias and the bond revocation (and counsel's actions or lack of action with regard thereto) are not the basis for Petitioner's current custodial status. Rather, Petitioner is in custody pursuant to the trial court's reinstatement of the original six-year sentence. As such, these are not cognizable habeas claims.

Petitioner's claim that his counsel failed to object at the re-sentencing hearing where the trial court sentenced him to eight years, rather than the previously-imposed six years, is a

cognizable habeas claim, and seemingly preserved for federal habeas merits review as it was raised at all levels of the state courts. *See* Ex. 15, Doc. 7-1, at 79-80) (raising claim on direct appeal to the Eighth District Appellate Court); Ex. 24, Doc. 7-1, at 154-55 (raising claim on appeal to the Ohio Supreme Court); *see also Johnson I*, 2018 WL 460743, at *7 (finding claim moot due to remand to impose original sentence).

The undersigned must, however, agree with Respondent that this claim fails because Petitioner cannot show prejudice. In short, to obtain habeas relief on an ineffective assistance claim, Petitioner must first satisfy the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*'s first prong, Petitioner must demonstrate that "counsel's representation was deficient in that it 'fell below an objective standard of reasonableness.'" *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005) (quoting *Strickland*, 466 U.S. at 688). *Strickland*'s second prong requires Petitioner to show "prejudice," that is, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Further, habeas review is "doubly deferential" because § 2254(d)(1) of AEDPA limits the circumstances in which federal courts may grant a writ of habeas corpus. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable, the state court's decision must have been more than incorrect or erroneous . . . The state court's application must have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (citations omitted).

The state appellate court found Petitioner's ineffectiveness claim on direct appeal moot after it sustained his sentencing error argument and remanded for the limited purpose of executing the original sentence. *Johnson I*, 2018 WL 460743, at *7. Petitioner cannot show any prejudice

24

from counsel's failure to object to an eight-year sentence when Petitioner won that argument before the state court and is now serving the six-year, rather than the eight-year sentence.

Thus, the undersigned finds the state appellate court's decision that Petitioner's ineffectiveness claim on this basis was moot following its determination that the trial court erred in imposing the eight-year sentence, was not contrary to, or an unreasonable application of, federal law. *See Strickland*, 466 U.S. at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.").

<u>Ground Four</u>

In Ground Four, Petitioner asserts the trial court violated his Eighth Amendment rights when it failed to consider his medical condition before: (1) issuing a capias, and (2) imposing sentence. (Doc. 1, at 10). Respondent contends this ground does not raise a cognizable habeas claim, and contends (without citation) that there can be no Eighth Amendment violation when a sentencing is within the statutory range (Doc. 7, at 25-26). In Reply, Petitioner contends it was an "unreasonable and draconian decision [to] revok[e] Petitioner's bond and issue a capias for his arrest for failing to appear in court when he was ordered bedrested from heart surgery". (Doc. 14, at 7). This, he asserts, "coupled with the trial court's failure to properly take his medical condition into consideration before imposing a harsh sentence that is [2X] the minimum crosses the threshold of cruel and unusual punishment." *Id.* He argues he should have received a three-year minimum sentence. *Id.* at 9.

Again, as noted in Ground Two, the trial court's revocation of bond and issuance of a capias do not raise cognizable claims on habeas review as they do not challenge the basis for Petitioner's

current custodial status. *See* 28 U.S.C. § 2254(a) (habeas relief is limited to claims that a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States").

Further, Respondent is correct that, to the extent Petitioner complains about the eight-year sentence, such a claim is non-cognizable because it is not the current basis for Petitioner's incarceration. To the extent Petitioner argues his six-year sentence violates the Eighth Amendment, such a claim is procedurally defaulted. Although Petitioner raised a claim to the state courts – in a post-conviction petition – that his sentence violated the Eighth Amendment (Ex. 42, Doc. 7-1, at 392-95), this challenge was to his then-pending eight-year sentence, and, further, the state courts found such a claim barred by *res judicata* because it was not raised on direct appeal and did not rely on evidence outside the trial record. *See* Ex. 45, Doc. 7-1, at 431 (finding claims in post-conviction petition barred by *res judicata*); *Johnson II*, 2018 WL 459834, at *2 (affirming); *see also State v. Perry*, 10 Ohio St. 2d 175, 180 (1967).[4] Ohio's *res judicata* principle is an adequate and independent basis on which to foreclose federal habeas review. *See, e.g.*, *Williams v. Bagley*, 380 F.3d 932, 966-67 (6th Cir. 2004).

Ground Four should be denied as non-cognizable, procedurally defaulted, and meritless.

---

4. Moreover, even were the Court to reach the merits of Petitioner's Eighth Amendment claim, it would fail. The Supreme Court has determined that strict proportionality is not required between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 959–60 (1991); *see also United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). Interpreting this "narrow proportionality principle," the Sixth Circuit has held that "only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583. Consequently, "[a] sentence within the maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 290, 302 (6th Cir. 2000). Indeed, the trial court noted Petitioner "[did] not allege that his sentence falls outside a valid statute". (Ex. 45, Doc. 7-1, at 433). As the sentence fell within the statutory range, it is not "extreme" or "grossly disproportionate". *See Thompson v. Williams*, 685 F. Supp. 2d 712, 728 (N.D. Ohio 2010); *see also Ruffin v. Lazaroff*, 2016 WL 7974123, at *7 (N.D. Ohio), *report and recommendation adopted*, 2017 WL 347381.

Ground Five

In Ground Five, Petitioner again alleges ineffective assistance of trial counsel – this time as to attorney Serrat. (Doc. 1, at 12). He contends Serrat abandoned him by not appearing at sentencing, and that he pleaded guilty "solely on the belief induced by counsel that [he] would receive the minimum prison sentence." (Doc. 1, at 12). The record reflects attorney David Grant appeared on Petitioner's behalf at sentencing. *See* Ex. 7, Doc. 7-1, at 39. Respondent asserts that any promise of a minimum sentence "is either fantasy or disinformation", and "the record plainly refutes the underlying assertion." (Doc. 7, at 26). In Reply, Petitioner asserts he retained attorney Grant "for the sole purpose of moving the trial court to continue the case" for medical reasons, but never fired attorney Serrat. (Doc. 14, at 11-12). He points to Serrat's statement at the plea hearing that "[t]here's an abundance of evidence I would like to present to the court for sentencing as to why my client should receive the minimum sentence." *See id.* at 12 (quoting transcript of December 15, 2015 plea hearing, Doc. 7-1, at 822). Preliminarily, although not framed as such, Respondent seems to argue this claim is procedurally defaulted. *See* Doc. 7, at 27-28 (noting Petitioner did not raise this claim at the plea hearing, the resentencing on remand, or direct appeal).

Petitioner did present a related claim in his post-conviction petition that Serrat abandoned him, but the trial court held, and appellate court affirmed, that this claim was barred by *res judicata* for failure to raise it on direct appeal. *See* Ex. 42, Doc. 7-1, at 396-97 (post-conviction petition); Ex. 45, Doc. 7-1, at 427-35; *Johnson II*, 2018 WL 459834. This claim – both as presented to the state court, and as presented to this Court – is based on evidence in the record, and thus should have been raised on direct appeal. *See Perry*, 10 Ohio St. 2d at 180; *Williams*, 380 F.3d at 966-67. It is thus procedurally defaulted unless Petitioner can show cause and prejudice to overcome the default. Petitioner did raise a claim of ineffective assistance of appellate counsel for failure to raise

27

an assignment of error that his plea was not knowing, intelligent, and voluntary due, *inter alia*, to the ineffective assistance of trial counsel. *See* Ex. 27, Doc. 7-1, at 182-88. A valid claim of ineffective assistance of counsel may serve as cause to overcome a procedural default, if that ineffective assistance of counsel claim is also properly preserved. *Edwards v. Carpenter*, 529 U.S. 446, 451-53 (2000). However, for the reasons discussed below in Ground Seven, Petitioner cannot show ineffective assistance of appellate counsel on this basis; he therefore cannot use it as cause and prejudice to overcome his default of this ground.

Ground Six

In Ground Six, Petitioner contends his due process rights were violated when the trial court denied his post-conviction relief petition. (Doc. 1, at 13). Respondent contends this ground is non-cognizable as it challenges only questions of state law. (Doc. 7, at 32-33).

Petitioner contends that it was error for the trial court to deny his post-conviction petition less than 24 hours after the State filed its brief, because such action "deprive[d] the Petitioner a response to the State's opposition." (Doc. 1, at 13). But he has pointed to no clearly established federal law that due process is violated when a state court fails to allow a reply brief. *See, e.g.*, *Wills v. Moore*, 2008 WL 2323786, at *11 (S.D. Ohio) ("The mere failure by the state court to allow Petitioner an opportunity to file a reply brief does not rise to the level of a violation of his federal due process rights. Petitioner had an opportunity to submit facts and evidentiary documents to demonstrate his entitlement to relief when he filed his petition for post-conviction relief. The state courts were not bound by Federal law to provide Petitioner with an additional opportunity to support his claims by filing a reply brief."); *see also Person v. Ercole*, 2015 WL 4393070, at *2 (S.D.N.Y.) ("[D]isposition of a case without the filing of a reply does not violate a litigant's constitutional due process right.").

Moreover, "It is clear, not only from the language of . . . 2254(a), but also from the common-law history of the writ, that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). States have no federal constitutional obligation to provide postconviction remedies, *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987), and the Sixth Circuit has thus held that "habeas corpus cannot be used to challenge errors or deficiencies in state postconviction proceedings." *Davis v. Burt*, 100 F. App'x 340, 351 (6th Cir. 2004); *see also Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) ("the writ is not the proper means" to challenge "collateral matters" as opposed to "the underlying state conviction giving rise to the prisoner's incarceration") (internal citations omitted).

For these reasons, the undersigned recommends Ground Six be denied as non-cognizable.

<u>Grounds Seven & Eight</u>

In Ground Seven, Petitioner asserts ineffective assistance of appellate counsel. (Doc. 1, at 14). In Ground Eight, he asserts his due process and equal protection rights were violated when the appellate court denied his application for reopening in which he asserted these ineffective assistance of appellate counsel claims. *Id.* at 15. Respondent asserts Ground Seven is procedurally defaulted and, alternatively, meritless, and Ground Eight is non-cognizable. (Doc. 7, at 34-37). Petitioner asserts that Ground Seven is not defaulted because, contrary to the state court's finding, the application was timely "and if not, Petitioner provided adequate reasons for delay in filing his claim." (Doc. 14, at 16).

The state appellate court denied Petitioner's application for reopening as untimely and found he had not shown good cause for the delay. *See Johnson III*, 2018 WL 3479244. Under Ohio law, applications for reopening under Appellate Rule 26(B) must be filed "within ninety days from

journalization of the appellate judgment unless the applicant shows good cause for filing at a later time." Ohio App. R. 26(B)(1). Petitioner argued to the state court – and seemingly argues here – that this determination is incorrect, and his application was timely due to tolling from his intervening motions for reconsideration and *en banc* consideration. *See Johnson III*, 2018 WL 3479244, at *1 ("Johnson's claim is simply that an intervening motion tolls the time for filing an application to reopen."); Doc. 14, at 17. Alternatively, he argues he "did indeed show good cause for delay in filing." (Doc. 14, at 18).

First, a state court's interpretation of state law is entitled to this Court's deference. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to re-examine state-court determinations on state law questions"); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal, binds a federal court sitting in habeas corpus."); *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (federal court must "defer to a state court's interpretation of its own rules of evidence and procedure"). The state court explained that the application was untimely and that intervening "motions do not toll the time in which to file." *Johnson III*, 2018 WL 247244, at *1. This is a question of state law. As such, Petitioner's challenge – in Ground Eight – to the state process, based on state law, by which his application for reopening was denied – presents a non-cognizable issue on federal habeas review.

Second, the Sixth Circuit has held the untimeliness of an Ohio Rule 26(B) application to reopen is an adequate and independent state law ground on which to bar federal habeas review. *See Baker v. Bradshaw*, 495 F. App'x 560, 566 (6th Cir. 2012) ("an untimely Rule 26(B) application is an adequate and independent state ground that results in a claim being procedurally defaulted"). Petitioner has not asserted cause and prejudice to overcome the default. Rather, he

asserts the state court was incorrect in finding he did not have good cause for the delay because he filed intervening motions. *See* Doc. 14, at 17-18. Even were the undersigned to somehow find this to be adequate "cause", Petitioner has not shown prejudice for the reasons stated below.

If Petitioner cannot show prejudice from his underlying ineffective assistance of appellate counsel claim, he also cannot show prejudice to overcome the default. *See Hall v. Vasbinder*, 563 F.3d 222, 237 (6th Cir. 2009); *Joseph v. Coyle*, 469 F.3d 441, 462-63 (6th Cir. 2006). Ineffective assistance of appellate counsel claims are evaluated under the *Strickland* standard set forth above in Ground Two. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Parks v. Bobby*, 545 F. App'x 478, 481 (6th Cir. 2013). An appellate attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). "In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions." *McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000). "Counsel's performance is strongly presumed to be effective." *McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004) (quoting *Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000)). To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that appellate counsel "ignored issues [which] are clearly stronger than those presented." *Smith*, 528 U.S. at 288 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)); *see also Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003). In sum, Petitioner must demonstrate appellate counsel's performance was deficient, and the deficient performance so prejudiced the appeal such that the appellate proceedings were unfair and the result unreliable. *See Strickland*, 466 U.S. at 687.

In his Rule 26(B) application, Petitioner alleged appellate counsel was ineffective for failure to assign as error on direct appeal: (1) a challenge to the knowing, intelligent, and voluntary

nature of his plea; (2) an argument that the six-year sentence imposed was vindictive; and (3) an argument about the State's filing of exhibits excluded by the trial court. (Ex. 27, Doc. 7-1, at 180-94). Petitioner presents no direct argument as to how these claims were stronger than those counsel did present on direct appeal (*see* Doc. 14, at 15-17), namely, the suppression issue, and errors in the imposition of the eight-year sentence (*see* Ex. 15, Doc. 7-1, at 63-81). Notably, counsel obtained a remand on the sentencing argument on direct appeal. *See Johnson I*, 2018 WL 460743, at *7.

First, Petitioner has not shown that a challenge to his plea is stronger than the issues presented on direct appeal. It is well-settled that a guilty (or no contest) plea must be entered knowingly, intelligently, and voluntarily, without coercion, in order to be valid. *See Bousley v. United States*, 523 U.S. 614, 618 (1998); *Brady v. United States*, 397 U.S. 742, 747, (1970); *Boykin v. Alabama*, 395 U.S. 238 (1969). The Supreme Court in *Boykin v. Alabama* set forth the requirement that the waiver of rights by plea must be clear on the record: the record must clearly disclose that the defendant voluntarily and understandingly entered his plea. 395 U.S. at 243–44.

Courts look to the totality of the circumstances in determining whether the plea was made knowingly, intelligently, and voluntarily. *Brady*, 397 U.S. at 748. The circumstances must show the defendant was fully aware of the consequences and there were no threats, misrepresentations, or promises that are improper. *Id.* at 755. The plea hearing transcript in this case reflects that the prosecutor explained the pending charges (Ex. 75, Doc. 7-1, at 774-49), and the trial court explained Petitioner's rights and potential sentences (which Petitioner acknowledged he understood) (Ex. 75, Doc. 7-1, at 750-54). The trial court asked Petitioner whether "anybody [had] made any threat or promise other than what's on the record here in order to get you to plead no contest?", and Petitioner responded "No." *Id.* at 756. Nowhere in the transcript is there a statement

32

that Petitioner was promised a minimum sentence. *See id.* at 747-61. Petitioner thus cannot show this issue was somehow stronger than those his counsel raised on direct appeal, *see Smith*, 528 U.S. at 288, and his ineffective assistance of counsel claim on this basis fails.

Second, as to his vindictive sentencing claim, in his 26(B) application, Petitioner argued the facts showed he was offered a "tentative sentence of two years" in exchange for a plea, "[a]nd following a motion to suppress, and a no contest plea . . . a harsher sentence of six years was imposed." (Ex. 27, Doc. 7-1, at 188). At a December 2, 2015 pretrial, the record reflects that the State made the stated offer, but Petitioner rejected it. *See* Ex. 30, Doc. 7-1, at 206-08. Although Petitioner argued in his 26(B) motion that the record was "ambiguous of the Prosecutor withdrawing the plea bargain offer" (Ex. 27, Doc. 7-1, at 182), the transcript reflects that Petitioner rejected the plea offer because he wanted to proceed with his motion to dismiss (Ex. 30, Doc. 7-1, at 208) (counsel's statement, after the prosecutor described the offer and he conferred with his client that: "I had the opportunity to discuss this matter with my client several times, including just now again, and at this time it's his desire to go with the Motion to Suppress."). Indeed, immediately after this statement by counsel, the trial court made clear that the plea deal would be "off the table". *Id.* at 209 ("If upon hearing the evidence I find for the State, in other words, deny your Motion to Suppress, then it's my understanding of the official policy of the prosecutor's office is that any deals are off the table. And so you will be required either to go to trial, or to plead to the first degree felony, which would carry, you know, a mandatory minimum sentence of three years up to a possible eleven years."). The trial court asked Petitioner if he understood; he said he did and – after conferring with counsel – confirmed that he wanted to proceed with the motion to suppress. *Id.* at 210. Thus, any claim of vindictive sentencing based on Petitioner's allegation that he was somehow entitled to the two-year sentence offered by the prosecutor – that he rejected – is

meritless. As such, it cannot be ineffective assistance of appellate counsel not to bring such a claim. *See Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010) (counsel cannot be constitutionally ineffective for failing to pursue a meritless claim or raise a meritless objection).

Finally, Petitioner's argument about the appellate court's consideration of exhibits on appeal that the trial court excluded is not entirely clear from the briefs he presents to this court. That is, he does not explain the evidence to which he refers. *See* Doc. 1, at 14 ("Appellate counsel allowed the State's Attorney to argue on appeal, evidence ruled inadmissible by the trial court[.]"). His Reply/Traverse does not further clarify, but rather, only argues the timeliness and good cause. *See* Doc. 14, at 17-18. Looking to Petitioner's 26(B) motion, he argued the state appellate court made an incorrect statement when it said: "Over defense counsel's objections, still photographs of the video allegedly taken during the transaction with Johnson were introduced into evidence." *Johnson I*, 2018 WL 460743, at *4. He argued this was incorrect because defense counsel objected, the objection was sustained, and the evidence was "only allowed to be discussed but not introduce[d] into evidence by the trial court judge." (Ex. 27, Doc. 7-1, at 123). This appears to be accurate – the trial judge stated "I think for the purpose of a motion to suppress, the only appropriate exhibit would be the affidavit. I am not – I'm going to sustain any objection to any other exhibit." (Ex. 30, Doc. 7-1, at 217). But Petitioner fails to establish any prejudice from this misstatement. The appellate court ultimately found: "Removing the language deemed surplusage by the trial court, it is beyond dispute that the controlled buy took place, heroin was purchased, and a search warrant executed within a 36– to 48–hour time frame." *Johnson I*, 2018 WL 460743, at *5. Petitioner fails to show how any error in the court's consideration of the surplus exhibits – if that was even, in fact, error – impacted its decision. He thus cannot establish prejudice from appellate counsel's failure to raise the issue.

Therefore, the undersigned recommends the Court find Ground Seven procedurally defaulted, and alternatively, meritless, and find Ground Eight non-cognizable.

Motion for Evidentiary Hearing

In conjunction with his Reply/Traverse, Petitioner filed a request for an evidentiary hearing "so that the foregoing petition and claims made herein can be heard, and decided on all of the necessary facts of the case." (Doc. 13-2, at 1). Respondent filed an opposition, arguing no hearing was required (Doc. 15), and Petitioner filed a Reply (Doc. 16).

"[W]here claims are non-cognizable and/or procedurally defaulted, such claims require no further factual development and thus an evidentiary hearing is not needed." *Minor v. Wainwright*, 2019 WL 653789, at *8 (N.D. Ohio), *report and recommendation adopted*, 2019 WL 652411; *see also Alt v. Eppinger*, 2015 WL 3489867, at *6 (N.D. Ohio) ("[I]f no cognizable or non-defaulted grounds are before federal court, no evidentiary hearing should be held since additional evidence cannot convert a non-cognizable claim into one upon which relief may be granted, nor, of itself, excuse a procedural default."). Further, "federal courts are prohibited from conducting evidentiary hearings to supplement existing state court records when a state court has issued a decision on the merits with respect to the claim at issue." *Ballinger v. Prelesnik*, 709 F.3d 558, 561 (6th Cir. 2013) (citing *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011)). Grounds One, Three, Six, and Eight are non-cognizable. Ground Two is non-cognizable and meritless. Ground Four is non-cognizable, procedurally defaulted, or meritless. Ground Five is procedurally defaulted. Ground Seven is procedurally defaulted and meritless. Further, Petitioner has not demonstrated how an evidentiary hearing would entitle him to relief in this case.

For these reasons, Petitioner's motion for an evidentiary hearing (Doc. 13-2), is DENIED.

## CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the Court recommends the Petition (Doc. 1) be DENIED. Further, as detailed above, Petitioner's request for an evidentiary hearing (Doc. 13-2) is DENIED.

s/ James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).